**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **JACK GREEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:07-0363** |
| | ) | |
| **JAMES RUBENSTIEN,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending are Defendants' Motion to Dismiss (Document No. 22.); Motion to Dismiss Deliberate Indifference Claims Against Correctional Medical Services (Document No. 46.); David M. DeVere, D.D.S.'s Motion to Dismiss Deliberate Indifference Claims (Document No. 49.); and James Rubenstein and Thomas McBride's Motion for Summary Judgment (Document No. 60.). Having thoroughly examined the record, the undersigned concludes, and hereby respectfully recommends, that Defendants' Motion to Dismiss (Document No. 22.) should be granted; Motion to Dismiss Deliberate Indifference Claims Against Correctional Medical Services (Document No. 46.) should be denied; David M. DeVere, D.D.S.'s Motion to Dismiss Deliberate Indifference Claims (Document No. 49.) should be considered a Motion for Summary Judgment and granted; and James Rubenstein and Thomas McBride's Motion for Summary Judgment (Document No. 60.) should be granted.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed a Complaint on June 6, 2007, naming as Defendants James Rubenstien, Commissioner of the Division of Corrections, Thomas McBride, formerly the Warden of Mount Olive Correctional Complex [hereinafter sometimes referred to as "the State Defendants"], and

Correctional Medical Service, Inc., Mary Westfall, Administrator for C.M.S., and Dr. Devere D.D.S. [hereinafter sometimes referred to as "the contract Defendants"] and referring to certain grievance forms attached to his Complaint for his statement of claims. (Document No. 3.)[1] Plaintiff also filed an Application to Proceed Without Prepayment of Fees and Costs. (Document No. 1.) Plaintiff indicates in his Complaint that he filed a request for a dentist on May 14, 2004, after he broke his tooth while eating. On May 24, 2004, Dr. Peernington examined Plaintiff and told him that all of his top teeth were decayed and needed to be extracted. Plaintiff alleges that he did not receive further dental care for 11 months. In April, 2005, Plaintiff's top teeth were extracted by Dr. Buch. Plaintiff claims that one tooth broke off during the extraction and Dr. Buch stated that "he did not have time to go digging for a root." Although Dr. Buch told Plaintiff that impressions for dentures would be made in two weeks, Plaintiff contends that the impressions were not made until May 4, 2006. On May 4, 2006, Dr. Devere examined Plaintiff, took x-rays, and made impressions for upper dentures. Plaintiff asserts that Dr. Devere performed oral surgery to remove the root from the broken tooth. In September 2006, Plaintiff received his dentures and showed Dr. Devere "a bone that had come through my gums." Even though Dr. Devere stated that an additional oral surgery was necessary to remove the root tip, Plaintiff did not undergo the surgery until May 3, 2007. Plaintiff alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments of the United State Constitution through their deliberate and reckless indifference to his serious medical needs "by withholding medical treatment from someone in pain and suffering for 11 months, and again for over 13 months, and again for 8 months." Plaintiff further alleges that "[m]edical and correctional

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

personnel retaliated against me because I already have a lawsuit against them in this Court. That's why they made me wait 11 months to get my teeth pulled, and another 13 months to get impressions and oral surgery then another 8 months to get oral surgery again. I have been in pain and suffering for 2 years 11 months and a few days all because they retaliated against me because I sued them."[2] Plaintiff seeks compensatory and punitive damages.

By Order filed on January 7, 2008, the undersigned determined that "Plaintiff potentially states a claim under the Eight Amendment of the United States Constitution and a claim of retaliation in response to the exercise of a constitutional right" remediable under 42 U.S.C. § 1983 and granted his Application to Proceed Without Prepayment of Fees and Costs. (Document No. 8.) Summonses were issued and returned. (Document Nos. 9 - 15.) The Defendants filed Answers to Plaintiff's Complaint. (Document Nos. 16 and 18.) Defendants, Commissioner Rubenstein and Warden McBride [the State Defendants], filed a Crossclaim against the contract Defendants (Document No. 17.) and those Defendants filed an Answer to the Crossclaim (Document No. 19.).

On March 4, 2008, the contract Defendants filed a Motion to Dismiss stating that "Mary Westfall is a registered nurse and is employed by Correctional Medical Services as a Health Care Administrator at Mount Olive Correctional Center. Dr. DeVere is a dentist and is contractually employed by CMS to provide dental care to inmates at Mount Olive. CMS is the health care provider for all West Virginia Department of Corrections facilities." (Document No. 22.) They contend that Plaintiff's Complaint against them should be dismissed because Plaintiff failed to

---

[2] Plaintiff filed a Complaint in the District Court naming Warden McBride and Lieutenant Robert Rhodes as Defendants claiming that they subjected him to unsafe conditions and a risk of harm at the hands of other inmates. *Green v. McBride, et al.*, Civil Action No. 5:04-1181. The contract Defendants in this matter were not Defendants in that matter. On September 25, 2007, the District Court dismissed that action finding that Plaintiff had failed to exhaust administrative remedies before filing it. *Id.*, Document No. 37.

comply with the pre-filing requirements of the West Virginia Medical Professional Liability Act [WVMPLA], W. Va. Code § 55-7B-6, by failing to provide a Notice of Claim and a screening certificate of merit before filing this action.

On August 22, 2008, Defendant Correctional Medical Services filed a Motion to Dismiss Deliberate Indifference Claims. (Document No. 46.) Correctional Medical Services seeks dismissal on grounds that it "does not qualify as a 'person' for purposes of 42 U.S.C. § 1983."

On August 26, 2008, Defendant Dr. DeVere filed a Motion to Dismiss Deliberate Indifference Claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Document No. 49.) Dr. DeVere states that "[t]he major claim of delay in treatment alleged by the plaintiff allegedly occurred between May 24, 2004, and April 13, 2005. That claim is barred by the statute of limitations and is barred by plaintiff's failure to exhaust his administrative remedies. More importantly for Dr. DeVere, those claims arose a full year before the plaintiff ever saw this defendant as a patient." Dr. DeVere further states that "[t]he Complaint in this case fails to satisfy the objective or subjective components of deliberate indifference against Dr. DeVere. The record shows that Dr. DeVere was incredibly attentive to this patient and provided him with timely and appropriate care. There is no allegation against Dr. DeVere which alleges treatment which is grossly incompetent or so inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Dr. DeVere did not submit any Affidavit or other evidence in support of his Motion though he would have the Court consider matters beyond the pleadings.

On October 31, 2008, the State Defendants filed a Motion for Summary Judgment and a Memorandum in Support. (Document Nos. 60 and 61.) The State Defendants contend that (1) they had nothing directly to do with and were unaware of the circumstances which Plaintiff alleges in this matter and therefore were not deliberately indifferent to Plaintiff's serious medical needs; (2) they

4

are not subject to suit in their official capacities under Section 1983; (3) Plaintiff failed to exhaust administrative remedies; and (4) Plaintiff's claims are barred by the applicable statute of limitations. The State Defendants attach to their Motion (Document No. 60.) a copy of a portion of the transcript of Plaintiff's deposition; medical records pertaining to Plaintiff's dental problems; Policy Directive 335.00 pertaining to Inmate Grievance Procedures; the Declaration of Ms. Charlene Sotak, Division of Corrections Inmate Grievance Coordinator, including copies of Plaintiff's administrative grievances and responses thereto; Plaintiff's G-1 and G-2 Grievance Forms indicating his complaints respecting his dental care and Warden McBride's and Commissioner Rubenstein's responses ; Plaintiff's answers to several of Defendants' Interrogatories; the Expert Report of Howard H. Painter of Painter & Associates, LLC, a firm in the business of private investigations, security consulting and criminal justice consulting, respecting whether Defendants withheld or failed to provide timely and adequate dental care to Plaintiff and retaliated against him because he had filed a suit against Defendants; and performance standards for the provision of health services in the Standards for Adult Correctional Institutions, 4th Edition.

Notices pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), were issued to Plaintiff advising him of his right to file responses to the contract Defendants' Motions to Dismiss and the State Defendants' Motion for Summary Judgment. (Document Nos. 27, 48, 51 and 62.)

Plaintiff filed a Sworn Affidavit on May 12, 2008 (Document No. 29.), apparently in response to the contract Defendants Motion to Dismiss (Document No. 22.). Plaintiff reiterates that he saw Dr. Peernington, a dentist, on May 24, 2004, about a tooth which broke off while he was eating. Dr. Peernington found that Plaintiff's top teeth were decayed and needed to be pulled. Eleven months later, Dr. Buch, another dentist pulled Plaintiff's teeth. During this procedure, one of Plaintiff's teeth broke off leaving the root. Dr. Buch told Plaintiff that he would schedule him for

impressions in two weeks. Thirteen months later, Plaintiff saw Dr. DeVere. Dr. DeVere took the impressions and found that Plaintiff should undergo surgery for the removal of the root which was left when Dr. Peernington pulled Plaintiff's teeth. Dr. DeVere performed surgery removing the root. Four months later, Plaintiff went in for his dentures, and showed Dr. DeVere that a bone was protruding through his gum. Eight months later, Dr. DeVere performed surgery again to remove the bone. Thus, Plaintiff states that "[i]t took 2 years 11months and a few days and two oral surgeries to pull 8 teeth." (Document No. 29, p. 2.) Plaintiff asserts that deliberate indifference is evident in Defendants' delay in treating him for his serious dental problems. Respecting the contract Defendants' assertion that this matter must be dismissed because Plaintiff failed to comply with the MPLA, Plaintiff contends that the MPLA is unconstitutional. Plaintiff states that "[t]he statute, W.Va. Code § 55-7B-6, is unconstitutional because it places an impossible barrier between the Plaintiff and his right to seek redress in the Courts. The law deprives the Plaintiff of his right of access to the Courts. The offending law has devised a legal catch-22. There are no provisions for the Plaintiff to obtain a medical expert to prepare the certificate of merit at government expense; but, without a physician to examine, diagnose and provide the certificate of merit required for every Defendant, Plaintiff cannot proceed or access the Court for his claims of negligence, medical malpractice or even deliberate indifference." (Id., p. 10.) Plaintiff filed a Motion to Dismiss the Motions of Correctional Medical Services and Dr. DeVere to Dismiss his Deliberate Indifference Claims and a verified Traverse on September 25, 2008. (Document Nos. 52 and 54.) By his Motion to Dismiss (Document No. 52.), Plaintiff complains that he did not receive a copy of the contract Defendants' Motion to Dismiss (Document No. 22.) and Correctional Medical Services Motion to Dismiss the Deliberate Indifference Claims (Document No. 46). By his Traverse (Document No. 54.), Plaintiff identifies the contract Defendants' Motions (Document Nos. 22, 46 and 49.) and

6

asserts essentially that Dr. DeVere's Motion (Document No. 49.) should be denied because "[t]here is a clear showing of facts and Constitutional issue in dispute . . .." Respecting Document Nos 22 and 46, Plaintiff reiterates that "he has never seen such Motions" and states further that "[a]s to the claim that Correctional Medical Service or Westfall can not be a party, in that they are an entity, [he] has named the persons responsible for Correctional Medical Service and Westfall at Mt. Olive Correctional Complex . . .. * * * Both entities have been successfully sued in the past, where [he] feels strongly he will prevail to his relief also." On November 25, 2008, Plaintiff filed an Objection to the State Defendants' Memorandum of Law in Support of their Motion for Summary Judgment. (Document No. 65.) Plaintiff contends that when he filed administrative grievances, Correctional Medical Services "would do some act, whether adequate or not is to be determined in a court of law, that null and avoided the grievances. Thus, [he] had no way of continuing the procedure, where an act was committed to void any grievance filed." Plaintiff states that "[t]his went ongoing" until he filed suit. On December 5, 2008, the State Defendants filed a Reply to Plaintiff's Objections. (Document No. 67.) The State Defendants assert that Plaintiff has not submitted an affidavit or declaration under oath as evidence in response to their Motion for Summary Judgment. They emphasize that Plaintiff has essentially admitted that he did not exhaust administrative remedies. Thus, the State Defendants urge the District Court to grant their Motion for Summary Judgment.

## THE STANDARD

### Motion to Dismiss

A *pro se* Complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *quoting* Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

**DISCUSSION**

### A.      The contract Defendants' Motion to Dismiss on grounds that Plaintiff did not comply with the WVMPLA (Document No. 22.).

The contract Defendants contend that Plaintiff's Complaint should be dismissed because Plaintiff failed to timely and properly file a notice of claim and a screening certificate of merit pursuant to the WVMPLA.[3] It appears from all of the documents which Plaintiff has filed that Plaintiff's main claim is that Defendants violated his Eighth Amendment right to adequate medical care and he is therefore seeking relief under 42 U.S.C. § 1983. Reading Plaintiff's documents liberally as the Court must, however, it appears that Plaintiff is also asserting a claim of medical negligence. In his Sworn Affidavit (Document No. 29.) in response to Defendants' Motion to

---

[3] West Virginia Code § 55-7B-6 provides the following in pertinent part:

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

Dismiss, Plaintiff challenges the Motion contending that the WVMPLA is unconstitutional.

The undersigned finds no indication in the record that Plaintiff complied with the prerequisites set forth in the WVMPLA. Plaintiff states, however, that "[t]he statute, W.Va. Code § 55-7B-6, is unconstitutional because it places an impossible barrier between the Plaintiff and his right to seek redress in the Courts. The law deprives the Plaintiff of his right of access to the Courts. The offending law has devised a legal catch-22. There are no provisions for the Plaintiff to obtain a medical expert to prepare the certificate of merit at government expense; but, without a physician to examine, diagnose and provide the certificate of merit required for every Defendant, Plaintiff cannot proceed or access the Court for his claims of negligence, medical malpractice or even deliberate indifference." (Document No. 29, p. 10.)

The undersigned views Plaintiff's assertion as an "as-applied" challenge to the constitutionality of the WVMPLA. See Giarratano v. Johnson, 521 F.3d 298, (4th Cir. 2008); Fisher v. King, 232 F.3d 391, 396 (4th Cir. 2000), considering inmates' contentions that a Virginia statutory exclusion of inmates from making requests for public records under the Virginia Freedom of Information Act is unconstitutional. Plaintiff is contending that as applied, the WVMPLA burdens his constitutional right of access to the Courts. It is well-established that indigent inmates have a constitutional right of access to the Courts. Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Access to the Courts must be adequate, effective and meaningful under the Federal Constitution. Bounds, 430 U.S. at 822, 97 S.Ct. at 1495. The undersigned finds that Plaintiff's right of access to the Courts is not burdened through the application of the WVMPLA in the context in which he finds himself. The WVMPLA does not exclude claims of inmates. Plaintiff is as entitled and capable of proceeding in Court with a medical negligence claim as anyone else provided he provides a notice of claim and a certificate of merit in conformity with the statute.

10

Plaintiff's "as-applied" constitutional challenge to the WVMPLA has no merit. The contract Defendants' Motion to Dismiss (Document No. 22.) should therefore be granted, and Plaintiff's claim of medical negligence, to the extent that he is asserting it, should be dismissed. This does not end it for the contract Defendants as they are subject to Plaintiff's Eighth Amendment claim.

**B.    Motion to Dismiss Deliberate Indifference Claims Against Correctional Medical Services (Document No. 46.).**

Correctional Medical Services claims that it "does not qualify as a 'person' for purposes of 42 U.S.C. § 1983." The State and its agencies such as the Division of Corrections are not "persons" amenable to suit under Section 1983 for damages. Howlett v. Rose, 496 U.S. 356, 365, S.Ct. , 110 L.Ed.2d 2430, 2437, 110 L.Ed.2d 332 (1990). A corporation acting under color of State law can be held liable under Section 1983 only for unconstitutional policies and practices. They cannot be held liable under the doctrine of *respondeat superior* for the individual actions of their employees. Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999); see also Motto v. Correctional Medical Services, 2007 WL 2897854, *3 (S.D.W.Va.)(District Judge Johnston). The Motion to Dismiss Deliberate Indifference Claims Against Correctional Medical Services (Document No. 46.) should therefore be denied.

**C.    David M. DeVere, D.D.S.'s Motion to Dismiss Deliberate Indifference Claims (Document No. 49.).**

Dr. DeVere asserts that Plaintiff's claim is barred by the statute of limitations and by Plaintiff's failure to exhaust his administrative remedies.[4] He also contends that the circumstances underlying Plaintiff's claim do not evidence his deliberate indifference in his treatment of Plaintiff's

---

[4] The undersigned will consider whether Plaintiff exhausted administrative remedies and whether his claims are barred by the applicable statute of limitations below in considering the State Defendants' claims.

dental problems. In this latter regard, Dr. DeVere would have the Court consider matters beyond the pleadings and therefore convert his Rule 12(b)(6) Motion to one for summary judgment. Federal Rule of Civil Procedure 12(d) provides that

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

In <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975), a Section 1983 case, the Fourth Circuit adopted the standard pronounced by another Court that at a minimum, the District Court is required to give a *pro se* litigant "fair notice of the requirements of the summary judgment rule." On September 25, 2008, the undersigned gave Plaintiff notice under <u>Roseboro</u> that he had the right to respond to Dr. DeVere's Motion to Dismiss and submit Affidavits and evidence supporting his positions. (Document No. 51.) That same day, having received <u>Roseboro</u> notices with respect to earlier Motions, Plaintiff submitted his verified Traverse addressing Dr. DeVere's Motion to Dismiss. The undersigned finds that while the undersigned's <u>Roseboro</u> notice did not expressly inform Plaintiff that the Court would treat Dr. DeVere's Rule 12(b)(6) Motion to Dismiss as a Motion for Summary Judgment, it gave Plaintiff notice of the requirements of the Rule 56 pertaining to summary judgment and Plaintiff responded in a sworn document. The undersigned therefore finds that the District Court may consider Dr. DeVere's Motion to Dismiss under Rule 56 and will proceed with a discussion of Plaintiff's claim in this matter and consideration of the evidence of record.

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

*See also* Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), *quoting* Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation); Dental care is recognized as "one of the most important medical needs of inmates." Hudson v. Bassett, 2008 WL 4820511, **6 (W.D.Va.); Sanders v. Bassett, 2008 WL 1967503, *2 (W.D.Va.), quoting Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980). Sentenced prisoners are therefore constitutionally guaranteed adequate medical/dental care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (*citing* Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(*quoting* Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.

13

1993)(quotation omitted)). *See also* <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

*See also* <u>Sosebee v. Murphy</u>, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978), *cert. denied*, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) First therefore, Plaintiff in this case must allege and eventually establish a "sufficiently serious" deprivation of adequate dental care and resulting "serious or significant physical or mental injury" in order to maintain and prevail

14

upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. *See* <u>Farmer</u>, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. It is well established that a private physician under contract with a State to provide medical services to inmates acts under color of State law when treating them and may therefore be held liable under Section 1983. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 54, 108 S.Ct. 2250, 2257, 101 L.Ed.2d 40 (1988); <u>Conner v. Donnelly</u>, 42 F.3d 220, 225 (4th Cir. 1994) ("If a physician treating a prisoner – whether by contract or referral – misuses his power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law.") Plaintiff in this case must therefore allege and establish that Dr. DeVere was aware that he was receiving constitutionally inadequate dental care and disregarded the serious physical and mental consequences.

The medical records evidence that Dr. DeVere saw Plaintiff for the first time on May 4, 2006, almost two years after Plaintiff saw Dr. Peerington and about thirteen months after Dr. Buch pulled his teeth. (Document No. 60, Exhibit Two.) It appears that Dr. Devere scheduled Plaintiff for surgery and directed him to stop taking Plavix. Dr. Devere performed oral surgery about a week later. It appears from the medical records that Dr. Devere attended to matters pertaining to Plaintiff's dental problems in July, August and September, 2006. Dr. Devere saw Plaintiff again on January 12, 2007, after Plaintiff's dental examination on January 4, 2007. Dr. Devere saw Plaintiff again on April 26, 2007, and found that a bone/tooth fragment needed to be removed. Dr. DeVere scheduled

15

the procedure for May 2, 2007. Dr. Devere's May 2, 2007, note indicates that he was unable to bring Plaintiff to the dental clinic "due to Q1 Seg Unit moving their Ad-Seg meeting from Thursday to Wednesday." Dr. DeVere performed the procedure the next day on May 3, 2007. He examined Plaintiff post-operatively on May 30, 2007, and discussed his dentures with him. Dr. DeVere saw Plaintiff on June 4, 6, 13, 14, 20 and 21, 2007, respecting Plaintiff's dentures.

Assuming that Plaintiff's dental problems were serious enough to give rise to an Eighth Amendment Claim, there is no indication in the record that Dr. DeVere was aware that he had received or was receiving constitutionally inadequate dental care and disregarded the serious physical and mental consequences. The record actually reveals that Dr. DeVere performed two surgeries and additionally saw Plaintiff nine other time to attend to Plaintiff's dental problems and the adjustment of his dentures over the 13 ½ month period from May 4, 2006, through June 21, 2007. Nothing therefore indicates that Dr. DeVere violated Plaintiff's Eighth Amendment rights. Moreover, if there was a period of time when prison officials and medical staff violated Plaintiff Eighth Amendment rights, it ended when Dr. DeVere commenced his treatment of Plaintiff's dental problems on May 4, 2006. Accordingly, Dr. DeVere's Motion to Dismiss as converted to a Motion for Summary Judgment should be granted.

> **D.      The State Defendants' Motion for Summary Judgment (Document No. 60.).**
>
> **1.      Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[5]  Woodford v.

---

[5] 42 U.S.C. § 1997e(a) provides as follows:

Ngo, 548 U.S. _81, 90 - 91, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 922, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). The Fourth Circuit has determined that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

"[T]here is no futility exception to the PLRA's exhaustion requirement." <u>Massey v. Helman</u>, 196 F.3d 727, 733 (7th Cir. 1999), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. <u>Moore v. Bennette</u>, 517 F.3d 717, 725 (4th Cir. 2008)("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. * * * Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. * * * Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively. * * * Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond." (Citations omitted.)); <u>Dale v. Lappin</u>, 376 F.3d 652, 656 (7th Cir. 2004); <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedy for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms; <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.) If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), Court's Syllabus (c)("The

18

PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. *See* Neal v. Goord, 267 F.3d 116, 121-122 (2nd Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court.

The West Virginia Division of Corrections' Policy Directive 335.00 (Document No. 60, Exhibit 5, Declaration of Charlene Sotak, attachment E.)[6] establishes procedures whereby State

---

[6] The Defendants submit The West Virginia Division of Corrections' Policy Directive 335.00 effective July 1, 2007. The undersigned, having considered the prior version(s) of Policy Directive 335.00 in assessing whether other State inmates exhausted administrative remedies, finds that the 2007 version prescribes the same procedure and time frame and is otherwise quite similar, though not identical, to the prior version(s). One notable difference is that under the prior version(s), inmates were required to submit G-1 and G-2 Grievance Forms. Under the 2007 version, inmates must submit an Inmate Grievance Form designed to accommodate each level of the administrative process. A copy of the Form is attached to the copy of the 2007 version of Policy Directive 335.00.

inmates may seek review of complaints which relate to any aspect of their imprisonment. Within 15 days after the circumstances occurred which are the subject of the inmate's complaint, the inmate must submit an Inmate Grievance Form to the Unit Manager. (Id., p. 4, ¶ V.B.1.) The Unit Manager must respond to the inmate's grievance within five business days. (Id., p. 4, ¶ V.B.4.) If the Unit Manager's response is unfavorable, the inmate may appeal within five working days to the Warden/Administrator by submitting the Grievance Form to the Warden/Administrator. (Id., p. 5, ¶ V.C.1.) The Warden/Administrator must respond to the appeal, in writing, within five working days. (Id., ¶ V.C.3.) If the Warden/Administrator's response is unfavorable, the inmate may appeal within five working days to the Commissioner of the Division of Corrections. (Id., p. 6, ¶ V.D.1.) The Commissioner must respond to the appeal within ten working days. (Id., p.6, ¶ V.D.3.) The administrative process is exhausted when the Commissioner responds to the inmate's final appeal.

Plaintiff has attached copies of documents pertaining to his administrative grievances to his Complaint (Document No. 3.) and the State Defendants have attached copies to their Motion for Summary Judgment (Document No. 60.) It appears that Plaintiff filed Grievance Forms complaining of delay in the treatment of his dental problems at the levels of the administrative grievance process and received responses as follows:

April 5, 2005 – G-1 Grievance Form complaining that "I broke a tooth May of last year. I put in a sick call to the dental. He came down here and told me he would call me up there to pull some teeth. He took 5 dollars off my book for medical services. Well, its been almost a year now, and I still have not been called out, and I still have trouble with my teeth. I think they have had long enough!" The response dated April 6, 2005, stated that "Mr. Green: I spoke with dental and was told that you would be placed on the list to be seen."

April 18, 2006 – G-1 Grievance Form complaining that "I have put in 4 requests to get my mouth fixed. The doctor wrote me back on 3-14-06 said he would be seeing me 'when'. It took me one year to get my top teeth pulled and he broke my tooth and left it in there. Now I have been trying for 13 months to get it fixed and get some teeth. My gum hurts so bad that it is hard for me to eat. So what should I do? Wait

another year or what." The response dated April 19, 2006, stated that "Mr. Green: I spoke to the dentist. You are on the schedule for 4/20/06. There have been security obligations in the Q[uilliam]s that have come up that have caused the wait to be longer. Pending any unforeseen security obligations, you are scheduled to be brought up to dental tomorrow."

April 27, 2006 – G-2 Grievance Form complaining that "I am tired of being lied to. The dentist told me on a request I wrote 3-14-06 that he would see me. Well I have not seen him yet. I wrote a G-1 to the Director. She said he would see me 4-20-06. Well still no dentist." Warden McBride responded by Memorandum dated May 5, 2006, stating that "I have been advised that you were escorted to the Dental Department yesterday, 04 May 2006. You were seen, x-rays were taken, impressions were made for upper dentures and a lower partial. A follow-up appointment was scheduled for Thursday, 11 May 2006 for a tooth extraction. I was advised that the delay in the tooth extraction was because you have been prescribed a blood thinner by the doctor in regard to other health maters, and before an extraction can be done, you have to be off the blood thinner for a week. As a result I consider your grievance resolved." Warden McBride advised Plaintiff of his right to appeal to the Commissioner of the Division of Corrections.

April 9, 2007 – G-1 Grievance Form complaining that "I am writing because I ha a bone sticking through my gum. I showed the dentist and he said that he would take care of it. Then the nurse came down to clean my teeth, and I showed here also but nothing has been done. He came down to align my teeth, and I would see him. I am afraid to let him back into my mouth. I showed him over 8 months ago, so now I will get it fixed my own self. He will never go into my mouth again." The response dated April 12, 2007, stated that "Mr. Green: According to your medical records, the dental hygienist examined you on January 4, 2007. [Illegible sentence] If you would like to dentist to evaluate you, please submit a sick call slip. Thank you."

April 23, 2007 – G-1 Grievance Form complaining that "I would like to know, how long does it take to get 8 teeth pulled and get my false teeth and to get my mouth fixed! Well it took 1 year to pull my teeth. Another year to cut bone out and get my false teeth. Now its going into another year. 23 months and my mouth is still screwed up." The response dated April 26, 2007, states that "As per our discussion today, I've placed you in the schedule book for Wednesday, May 2, 2007, in dental clinic."

May 1, 2007, G-1 Grievance Form complaining that "I need to know the dentist's name that pulled my teeth in 05. It was on the medical records, but I couldn't read it or the nurse couldn't read it. I would appreciate an answer to my last request, the G-1 that I mailed the 23rd of April." The response dated May 9, 2007, states that "The dentist's [sic] that were here was Dr. Jerry Pennington, DDS."

May 2, 2007 – G-1 Grievance Form complaining that "I wrote a G-1 to Mary Westfall in medical to see why it is taking so long to fix my mouth. They have been

working on me for three years now. It tool 11 months to get my top teeth pulled, 13 months to get impressions. I have a bone coming through my gum. I have been trying to get it fixed for over eight months. I want to know what's taking so long." The response dated May 3, 2007, stated that "You were escorted to dental today 3 May 07 and your problem should be taken care of for now."

May 7, 2007 – G-2 Grievance Form stating that "I need to know why it has taken 2 years 11 months and a few days to fix my mouth. I have written you before about this but no answer." Plaintiff attached an "additional page on back" describing his dental problems and the treatment he received over time and inquiring "Sir, I want to know why I had to lay in my cell and suffer for so long. I tried every way to get there, but all I could get was 'you're on the list.'" Warden McBride responded by Memorandum dated May 10, 2007, stating that "In your G-2 to my office, you stated that you refused to see the dentist in early 2007 because you didn't agree with the plan of care. You also stated that you saw the dentist recently and treatment was rendered. You also claimed that you had advised my office of your problems with the Dental Department before but had received no response. You are mistaken. It is documented that I responded to your G-2, IG-06-139 on 05 May 2006. The grievance was related to a dental issue. I shall consider your grievance resolved." Warden McBride advised Plaintiff of his right to appeal to the Commissioner of the Division of Corrections.

May 9, 2007 – G-1 Grievance Form complaining that "I need to know the dentist's name that I saw on May 24, 2004. I also need the dentist's name who pulled my teeth. And I want to know why I had to lay in this cell in pain and suffering for 2 years and 11 months and a few days. Unit Team, I know you can't answer this, but I would appreciate it if you would forward it to someone who can!" There are two responses. The first response states, "05/09/-07 This is a copy for your records. The original was sent to the Medical Department." The second response states "Mr. Green: You were seen in 2004 by Dr. Peerington. From looking at your chart, Dr. Buch extracted some of your teeth in 2004. Concerning your pain, I'm not sure what explanation I can offer for the issue of pain that happened two years ago. You were seen and treated by the dentists here as they felt was appropriate."

May 16, 2007 – Appeal to Commissioner Rubentein complaining that "Sir, I am not at all satisfied with the Warden's Response to my Grievance. These people had me laying in my cell for 11 months waiting to have 8 teeth pulled, and the whole 11 months I was in pain. Then after they pulled my teeth, I had to wait over 13 months to get impressions. Then they had to do oral surgery to cut out bones where the first dentist broke a tooth off and left it. When I went to get my teeth in Sept. 06, I showed the dentist where a bone was coming through my gum, he said he would take care of it. In Jan. 07, a nurse came to clean my teeth. I showed her the bone, and she said she would tell the dentist. Well, he came down in a few days to align my teeth and I would see him. He came back in April. This time he came to my cell, and again I showed him the bone, and this time he got me up to dental and again he had to do

oral surgery, and now my gums are just as bad as before." On May 22, 2007 Commissioner Rubenstein responded to Plaintiff's appeal stating that "the inmate has appealed the decision of the Warden in relation to the above-styled grievance. A review of the same indicates no reason to deviate from the Warden's decision. As such, this grievance is hereby denied."

May 23, 2007 – G-1 Grievance Form complaining that "My mouth is still hurting. My gums are killing me. I know this dentist has messed my mouth up. I want a neutral dental clinic for diagnosis and x-rays. If you cannot do anything, please forward to someone who can. Thank you."  The response is indicated as "Forwarded to Medical Dental 5-23-07."

Plaintiff therefore filed a G-1 Grievance Form on May 2, 2007, complaining about delay in the treatment which he received for his dental problems. While he received treatment then, he nevertheless filed a G-2 Grievance Form on May 7, 2007, complaining of the delay in his treatment to Warden McBride. Warden McBride responded by Memorandum dated May 10, 2007, and Plaintiff wrote Commissioner Rubenstein on May 16, 2007, appealing Warden McBride's response. On May 22, 2007, Commissioner Rubenstein responded affirming Warden McBride's decision. Plaintiff filed his Complaint in this matter on June 6, 2007. Clearly, Plaintiff exhausted administrative remedies with respect to his Eighth Amendment claim that Defendants acted with deliberate indifference to his serious dental needs. It is not evident that Plaintiff complained that he was not treated promptly for his dental problems in retaliation for his filing of a lawsuit against the Defendants. Plaintiff has therefore not exhausted administrative remedies with respect to this claim, and it should therefore be dismissed.

　　2.　　**Statute of Limitations.**

The State Defendants assert that "Mr. Green's Complaint regarding the April 5, 2005 G-1 grievance should be dismissed because it was filed on June 6, 2007, more than two years after the cause of action accrued. * * * [T]he statute of limitations in this case began to run at the time of the

23

alleged injury on April 5, 2005." (Document No. 61, p. 18.)

The applicable statute of limitations for an action filed pursuant to 42 U.S.C. § 1983 is based upon the State's limitations period applicable to a personal injury action. Owens v. Okure, 488 U.S. 235, 249, 109 S.Ct. 573, 581, 102 L.Ed.2d 594 (1989). Under West Virginia law, the statute of limitations for a personal injury action is two years.[7] W. Va. Code § 55-2-12. According, a two-year statute of limitations applies to this action. The time of accrual for a Section 1983 action is determined by federal law. Nassim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995), cert denied, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id. When harm results from a series of acts or omissions, Courts have found that the continuing violation doctrine applies. Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir. 2001)(The continuing violation doctrine applied to Eighth Amendment deliberate indifference claim and found to govern accrual.) Deliberate indifference to a serious medical need manifested in delay in the provision of medical treatment is a continuing violation which commences when the provider of the medical services has notice of the untreated condition and ends when treatment is provided. Heard v. Sheahan, 253 F.3d at 318 ("[T]he suit charges that the defendants inflicted cruel and unusual punishment on the plaintiff by refusing to treat his

---

[7] West Virginia Code § 55-2-12 provides the following:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

condition. This refusal continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail. Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew. A series of wrongful acts created a series of claims.") Thus, the limitations period begins to run on the last day of the delay.

It is evident that Dr. Peerrington determined that Plaintiff's top teeth should be pulled on May 24, 2004. Dr. Buch pulled Plaintiff's top teeth in April, 2005. Though a tooth broke off during Dr. Buch's extraction and Plaintiff had no top teeth, no attention was paid to these problems until Dr. DeVere attended to them in 2006 and 2007. Notice that Plaintiff had severe dental problems and delay in the provision of treatment for Plaintiff's dental problems is clearly evident in these circumstances. Applying the continuing violation doctrine, the undersigned finds that the statute of limitations accrued in 2006 when Dr. DeVere attended to Plaintiff's dental problems. Plaintiff's claims as presented by his June, 2007, filing of his Complaint in this matter are not barred therefore by the statute of limitations.

**3.** ***Respondeat Superior.***

The State Defendants assert that they are entitled to summary judgment because Plaintiff has not shown that they were aware that Plaintiff was receiving constitutionally inadequate dental care and disregarded the serious physical and mental consequences (Document No. 61, pp. 7 - 12.) and as they held supervisory positions, they cannot be held liable under the circumstances (Id., pp. 12 - 15.).

The doctrine of *respondeat superior* is generally inapplicable to actions arising under 42 U.S.C. § 1983. See Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if

"conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

The undersigned finds that it is not evident that Warden McBride or Commissioner Rubenstein did anything directly to cause the delay in treating Plaintiff's dental problems, interfered with his treatment or were indifferent to or tacitly authorized the circumstances about which Plaintiff complains. There is no indication that Warden McBride had knowledge of the circumstances until he received Plaintiff's G-2 Grievance Form in late April, 2006, just before Dr. Devere first saw Plaintiff. Warden McBride noted that Plaintiff had seen Dr. DeVere in his response to Plaintiff's grievance and considered his grievance resolved. There is no indication that Commissioner Rubenstein had knowledge of the circumstances until May 16, 2007, less than a month before Plaintiff filed his Complaint in this matter, when Plaintiff appealed Warden McBride's decision upon Plaintiff's second appeal to the Warden. For these reasons, the State Defendants' Motion for Summary Judgment should be granted.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' Motion to Dismiss (Document No. 22.), **DENY** the Motion to Dismiss Deliberate Indifference Claims Against Correctional Medical Services (Document No. 46.), consider Dr. DeVere's Motion to Dismiss Deliberate Indifference Claims a Motion for Summary Judgment and **GRANT** it (Document No. 49.), **GRANT** Commissioner Rubenstein and Warden McBride's Motion for Summary Judgment (Document No. 60.). **DISMISS** Plaintiff's Complaint against Dr. DeVere and the State Defendants, **DISMISS** Plaintiff's retaliation claim and **REMAND** this matter to the undersigned for further proceedings with respect to Plaintiff's claims against Correctional Medical Services and Ms. Westfall and consideration of whether their policies and practices were unconstitutional.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have thirteen (13) days from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and transmit a copy to counsel of record.

Date: February 26, 2009.

R. Clarke VanDervort
United States Magistrate Judge

28