## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| JACK GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 5:07-0363 |
| | ) |
| JAMES RUBENSTIEN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is Correctional Medical Services, Inc., and Mary Westfall's Motion for Summary Judgment (Document No. 80.), filed on April 2, 2009. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by Defendants in moving for summary judgment. (Document No. 89.) In response, Plaintiff filed his "Motion to Dismiss Correctional Medical Services, Inc., and Mary Westfall's Motion for Summary Judgment" and his "Sworn Affidavit" in support. (Document No. 91.) Having examined the record and considered the applicable law, the undersigned has concluded that Correctional Medical Services, Inc., and Mary Westfall's Motion for Summary Judgment should be granted and Plaintiff's Motion to Dismiss should be denied.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed a Complaint on June 6, 2007, naming as Defendants James Rubenstien, Commissioner of the Division of Corrections, Thomas McBride, formerly the Warden of Mount Olive Correctional Complex [hereinafter sometimes referred to as "the State Defendants"], and Correctional Medical Service, Inc., Mary Westfall, Administrator for C.M.S., and Dr. DeVere D.D.S.

[hereinafter sometimes referred to as "the contract Defendants"] and referring to certain grievance forms attached to his Complaint for his statement of claims. (Document No. 3.)[1] Plaintiff also filed an Application to Proceed Without Prepayment of Fees and Costs. (Document No. 1.) Plaintiff indicates in his Complaint that he filed a request for a dentist on May 14, 2004, after he broke his tooth while eating. On May 24, 2004, Dr. Pennington examined Plaintiff and told him that all of his top teeth were decayed and needed to be extracted. Plaintiff alleges that he did not receive further dental care for 11 months. In April, 2005, Plaintiff's top teeth were extracted by Dr. Buch. Plaintiff claims that one tooth broke off during the extraction and Dr. Buch stated that "he did not have time to go digging for a root." Although Dr. Buch told Plaintiff that impressions for dentures would be made in two weeks, Plaintiff contends that the impressions were not made until May 4, 2006. On May 4, 2006, Dr. Devere examined Plaintiff, took x-rays, and made impressions for upper dentures. Plaintiff asserts that Dr. Devere performed oral surgery to remove the root from the broken tooth. In September 2006, Plaintiff received his dentures and showed Dr. Devere "a bone that had come through my gums." Even though Dr. Devere stated that an additional oral surgery was necessary to remove the root tip, Plaintiff did not undergo the surgery until May 3, 2007. Plaintiff alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution through their deliberate and reckless indifference to his serious medical needs "by withholding medical treatment from someone in pain and suffering for 11 months, and again for over 13 months, and again for 8 months." Plaintiff further alleges that "[m]edical and correctional personnel retaliated against me because I already have a lawsuit against them in this Court. That's

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

why they made me wait 11 months to get my teeth pulled, and another 13 months to get impressions and oral surgery then another 8 months to get oral surgery again. I have been in pain and suffering for 2 years 11 months and a few days all because they retaliated against me because I sued them."[2] Plaintiff seeks compensatory and punitive damages.

By Order filed on January 7, 2008, the undersigned determined that "Plaintiff potentially states a claim under the Eighth Amendment of the United States Constitution and a claim of retaliation in response to the exercise of a constitutional right" remediable under 42 U.S.C. § 1983 and granted his Application to Proceed Without Prepayment of Fees and Costs. (Document No. 8.) Summonses were issued and returned. (Document Nos. 9 - 15.) The Defendants filed Answers to Plaintiff's Complaint. (Document Nos. 16 and 18.) Defendants, Commissioner Rubenstein and Warden McBride [the State Defendants], filed a Crossclaim against the contract Defendants (Document No. 17.) and those Defendants filed an Answer to the Crossclaim (Document No. 19.).

On March 4, 2008, the contract Defendants filed a Motion to Dismiss stating that "Mary Westfall is a registered nurse and is employed by Correctional Medical Services as a Health Care Administrator at Mount Olive Correctional Center. Dr. DeVere is a dentist and is contractually employed by CMS to provide dental care to inmates at Mount Olive. CMS is the health care provider for all West Virginia Department of Corrections facilities." (Document No. 22.) They contend that Plaintiff's Complaint against them should be dismissed because Plaintiff failed to comply with the pre-filing requirements of the West Virginia Medical Professional Liability Act [WVMPLA], W. Va.

---

[2] Plaintiff filed a Complaint in the District Court naming Warden McBride and Lieutenant Robert Rhodes as Defendants claiming that they subjected him to unsafe conditions and a risk of harm at the hands of other inmates. *Green v. McBride, et al.*, Civil Action No. 5:04-1181. The contract Defendants in this matter were not Defendants in that matter. On September 25, 2007, the District Court dismissed that action finding that Plaintiff had failed to exhaust administrative remedies before filing it. *Id.*, Document No. 37.

Code § 55-7B-6, by failing to provide a Notice of Claim and a screening certificate of merit before filing this action.

On August 22, 2008, Defendant Correctional Medical Services [CMS] filed a Motion to Dismiss Deliberate Indifference Claims. (Document No. 46.) CMS requested dismissal on grounds that it "does not qualify as a 'person' for purposes of 42 U.S.C. § 1983." On August 26, 2008, Defendant Dr. DeVere filed a Motion to Dismiss Deliberate Indifference Claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Document No. 49.) Dr. DeVere argued Plaintiff's "Complaint in this case fails to satisfy the objective or subjective components of deliberate indifference against Dr. Devere." (Id.) On October 31, 2008, the State Defendants filed a Motion for Summary Judgment and a Memorandum in Support. (Document Nos. 60 and 61.) The State Defendants contended that (1) they had nothing directly to do with and were unaware of the circumstances which Plaintiff alleges in this matter and therefore were not deliberately indifferent to Plaintiff's serious medical needs; (2) they are not subject to suit in their official capacities under Section 1983; (3) Plaintiff failed to exhaust administrative remedies; and (4) Plaintiff's claims were barred by the applicable statute of limitations. (Id.)

Notices pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), were issued to Plaintiff advising him of his right to file responses to the contract Defendants' Motions to Dismiss and the State Defendants' Motion for Summary Judgment. (Document Nos. 27, 48, 51 and 62.) Plaintiff filed a Sworn Affidavit on May 12, 2008 (Document No. 29.), apparently in response to the contract Defendants' Motion to Dismiss (Document No. 22.). (Document No. 29, p. 2.) Plaintiff argued that deliberate indifference was evident in Defendants' delay in treating him for his serious dental problems. Respecting the contract Defendants' assertion that the matter be dismissed because Plaintiff failed to comply with the MPLA, Plaintiff contended that the MPLA is unconstitutional

4

because "it places an impossible barrier between the Plaintiff and his right to seek redress in the Courts." (Id., p. 10.) Plaintiff filed a Motion to Dismiss the Motions of Correctional Medical Services and Dr. DeVere to Dismiss his Deliberate Indifference Claims and a verified Traverse on September 25, 2008. (Document Nos. 52 and 54.) By his Motion to Dismiss (Document No. 52.), Plaintiff complained that he did not receive a copy of the contract Defendants' Motion to Dismiss (Document No. 22.) and CMS's Motion to Dismiss the Deliberate Indifference Claims (Document No. 46). By his Traverse (Document No. 54.), Plaintiff identified the contract Defendants' Motions (Document Nos. 22, 46 and 49.) and asserted essentially that Dr. DeVere's Motion (Document No. 49.) should be denied because "[t]here is a clear showing of facts and Constitutional issue in dispute . . .." On November 25, 2008, Plaintiff filed an Objection to the State Defendants' Memorandum of Law in Support of their Motion for Summary Judgment. (Document No. 65.) Plaintiff contended that when he filed administrative grievances, CMS "would do some act, whether adequate or not is to be determined in a court of law, that null and avoided the grievances. Thus, [he] had no way of continuing the procedure, where an act was committed to void any grievance filed." On December 5, 2008, the State Defendants filed a Reply to Plaintiff's Objections. (Document No. 67.) The State Defendants asserted that Plaintiff has not submitted an affidavit or declaration under oath as evidence in response to their Motion for Summary Judgment. They emphasized that Plaintiff has essentially admitted that he did not exhaust administrative remedies. Thus, the State Defendants urged the District Court to grant their Motion for Summary Judgment.

On December 11, 2008, contract Defendants filed a "Motion for Modification of the Time-Frame Order." (Document No. 69.) Contract Defendants requested a "modification of the Time-Frame Order permitting the parties to file dispositive motions within thirty (30) days of the entry of

the Order resolving the pending Motions to Dismiss."[3] In support of the Motion, contract Defendants asserted that "assuming that there are claims of the plaintiff remaining after the ruling by the Court on the Motions to Dismiss, it will likely be helpful to the Court to permit the filing of dispositive motions to determine if there are remaining issues for trial."

By Proposed Findings and Recommendation entered on February 26, 2009, the undersigned recommended that the District Court (1) grant Defendants Westfall, Devere, and CMS's Motion to Dismiss Plaintiff's claim of medical negligence (Document No. 22.), (2) deny Defendant CMS's Motion to Dismiss Deliberate Indifference Claims (Document No. 46.), (3) grant Dr. DeVere's Motion to Dismiss Deliberate Indifference Claims (Document No. 49.), and (4) grant Commissioner Rubenstein and Warden McBride's Motion for Summary Judgment (Document No. 60.). (Document No. 70.) On March 10, 2009, Plaintiff filed his objections to the undersigned's Proposed Findings and Recommendation. (Document No. 74.) By Memorandum Opinion and Order entered on March 18, 2009, the District Court adopted the undersigned's Proposed Findings and Recommendation and referred the matter back to the undersigned for further proceedings with respect to Plaintiff's claims against CMS and Ms. Westfall for consideration of whether their policies and practices were constitutional. (Document No. 75.)

On April 2, 2009, Defendants Westfall and CMS filed a Motion of Summary Judgment and Memorandum in Support. (Document Nos. 80 - 82.) CMS first states that it is not a "person" for purposes of 42 U.S.C. § 1983. (Document No. 82, p. 2.) Thus, CMS alleges that "[a] corporation acting under color of state law can be held liable under Section 1983 only for unconstitutional policies and practices. They cannot be held liable under the doctrine of *respondent superior* for the

---

[3] The Court's Time-Frame Order provided that discovery should be completed by October 1, 2008, and dispositive motion were due by October 31, 2008. (Document No. 41.)

individual actions of their employees." (Id.) CMS argues that "the record in this case contains no evidence from which a reasonable trier of fact could find that Correctional Medical Services denied or delayed dental care to this plaintiff due to an unconstitutional policy or practice." (Id.) Defendant Westfall contends that as Health Services Administrator, she had no authority to make policy or to change policy. (Id., pp. 2 - 3.) Defendant Westfall further argues she "played [no] role in providing the dental care to this plaintiff." (Id., p. 3.) Specifically, Defendant Westfall claims that she "did not approve or deny or defer any treatment for this plaintiff and there is no evidence to dispute this fact." (Id.) Defendant Westfall states that "based on her personal knowledge, experience and her review of the records in this case, no delay in Jack Green's dental care was the result of any CMS policy or of deliberate indifference by CMS or any individual employed by CMS." (Id., p. 3.) Defendants contend that "there is no record in this case of any occasion when the plaintiff requested dental care and did not receive such care." (Id., p. 4.) Defendants claim that "plaintiff may, at best, argue that Dr. Pennington was negligent . . . [and] CMS cannot be found liable for the negligence act of Dr. Pennington under the doctrine of *respondeat superior*." (Id., p. 5.) In support of their Motion, Defendants attach the Affidavit of Mary Westfall (Document No. 80-1) and a copy of a portion of the transcript of Plaintiff's deposition and Plaintiff's responses to certain Request for Admissions. (Document No. 81).

On April 3, 2009, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to the Defendants' Motion for Summary Judgment. (Document No. 83.) On April 29, 2009, Plaintiff filed his "Objections to CMS and Mary Westfall's Motions for Summary Judgment." (Document No. 84.) Specifically, Plaintiff argued that Defendants' Motion for Summary Judgment should be denied because it was filed after the expiration of the dispositive motion deadline as set forth in the Court's Time-Frame Order. (Id.) By Order

entered on August 19, 2009, the undersigned granted contract Defendants' Motion for Modification of Time-Frame Order and directed the parties to file any dispositive Motions by September 14, 2009. (Document No. 86.) On September 1, 2009, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was again issued to Plaintiff, advising him of his right to file a response to the Defendants' Motion for Summary Judgment (Document No. 80.). (Document No. 89.)

On September 18, 2009, Plaintiff filed his "Motion to Dismiss Motion by Correctional Medical Services, Inc. and Mary Westfall for Summary Judgment." (Document No. 91.) Plaintiff argues that Medical Policy Directive 410.02 provides as follows: "Contractor's responsibility to ensure that the dentist and dental staff are available for treatment of dental emergencies. The contractor shall be responsible for the provisions of on-site and off-site general medical, dental and mental health speciality or diagnostic and ancillary services." (Id., p. 1.) Plaintiff submits a "Sworn Affidavit" in support of his Motion. (Id., pp. 2 - 9.) Plaintiff states that a "jury could find that the delay in providing dental care from May 14, 2004, until April, 2005, was deliberate indifference to the Plaintiff's serious medical needs. The treatment was knowingly [and] intentionally withheld for non-medical reasons. CMS and DOC officials erected arbitrary and burdensome procedures resulting in interminable delays and outright denials of medical care to Plaintiff causing unnecessary and wanton pain and suffering." (Id., p. 4.) Plaintiff declares that "the exhibits submitted prove the Defendants had prior knowledge of civil rights violations in Mt. Olive prison and failed to act or ignored complaints." (Id.) Thus, Plaintiff states that the risk of harm was "so obvious that officials should have known of it." (Id., p. 5.)

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the

moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

**DISCUSSION**

**A.     CMS's Motion for Summary Judgment:**

CMS claims that summary judgment is appropriate because it "does not qualify as a 'person' for purposes of 42 U.S.C. § 1983" and its policies and procedures are constitutional. A corporation acting under color of State law can be held liable under Section 1983 only for unconstitutional policies and practices. Monell v. Dep't of Soc. Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). They cannot be held liable under the doctrine of *respondeat superior* for the individual actions of their employees. Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999); see also Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006); and Motto v. Correctional Medical Services, 2007 WL 2897854, *3 (S.D.W.Va.)(District Judge Johnston).

Based on a review of the record, it appears that Plaintiff first sought treatment for a broken tooth on May 14, 2004. (Document No. 3-2, p. 5.) Plaintiff was examined by Dr. Pennington on May 24, 2004, who informed Plaintiff that the tooth needed to be extracted. (Document No. 60-1, p. 24.) Dr. Pennington advised Plaintiff that the tooth would be extracted when officials from Qulliams Unit brought Plaintiff to medical. (Document No. 3-2, p. 5; Document No. 81, pp. 1 - 2.) Plaintiff failed to seek dental care again until April 5, 2005, when Plaintiff filed a G1 grievance regarding the extraction of his broken tooth and upper teeth.[4] (Document No. 60-1, p. 50.) On April 6, 2005, the Unit Manager responded to Plaintiff's G1 grievance informing Plaintiff that he was placed on the list for dental treatment. (Id.) On April 13, 2005, Plaintiff was examined and instructed to stop taking Plavix so that his teeth could be safely extracted. (Document No. 60-1, pp. 6 and 24.) Dr. Buch extracted teeth numbers 8, 9, 10, and 13 on April 21, 2005. (Id., pp. 6 and 23.) On April 27, 2005, Dr. Buch extracted teeth numbers 2, 4, 5, and 6. (Id.) Dr. Buch noted that he fractured the facial root tip on tooth number five. (Id.) On March 14, 2006, Plaintiff filed a medical services request. (Document No. 3-2, p. 6.) Subsequently, Jessica Legg responded that Plaintiff was "on the schedule to be seen in dental." (Id.) On April 18, 2006, Plaintiff filed a G1 grievance regarding his dentures.[5]

---

[4] On April 5, 2005, Plaintiff filed a G-1 Grievance Form complaining that "I broke a tooth May of last year. I put in a sick call to the dental. He came down here and told me he would call me up there to pull some teeth. He took 5 dollars off my book for medical services. Well, its been almost a year now, and I still have not been called out, and I still have trouble with my teeth. I think they have had long enough!"The response dated April 6, 2005, stated that "Mr. Green: I spoke with dental and was told that you would be placed on the list to be seen." (Document No. 60-1, p. 50.)

[5] On April 18, 2006, Plaintiff filed a G-1 Grievance Form complaining that "I have put in 4 requests to get my mouth fixed. The doctor wrote me back on 3-14-06 said he would be seeing me 'when'. It took me one year to get my top teeth pulled and he broke my tooth and left it in there. Now I have been trying for 13 months to get it fixed and get some teeth. My gum hurts so bad that it is hard for me to eat. So what should I do? Wait another year or what." The response dated April 19, 2006, stated that "Mr. Green: I spoke to the dentist. You are on the schedule for 4/20/06. There have been security obligations in the Q[uilliam]s that have come up that have caused the wait to be

(Document No. 3-2, p. 12; Document No. 60-2, p. 47.) Defendant Westfall responded on April 19, 2006, informing Plaintiff that an appointment had been scheduled for April 20, 2006. (Id.) On April 27, 2006, Plaintiff filed a G2 grievance concerning his dentures.[6] (Document No. 3-2, p. 13; Document No. 60-1, p. 12; Document No. 60-2, p. 49.) On May 4, 2006, Dr. DeVere examined Plaintiff, took x-rays, and made impressions for Plaintiff's upper dentures and lower partial. (Document No. 60-1, p. 11; Document No. 60-2, p. 51.) On May 5, 2006, Warden McBride responded to Plaintiff's G2 grievance stating that Plaintiff's complaint appeared to be resolved because Plaintiff had been examined by Dr. DeVere. (Document No. 3-2, p. 14; Document No. 60-2, p. 51.)

Plaintiff argues that CMS "erected arbitrary and burdensome procedures that resulted in interminable delays and outright denials of medical care to suffering inmates." Although Plaintiff fails to specify the policy or procedure that is "arbitrary and burdensome," he states that he did not file grievances or sick call requests because medical has a practice of further delaying an inmate's treatment in retaliation for the filing of the grievance or medical request. The record, however,

---

longer. Pending any unforeseen security obligations, you are scheduled to be brought up to dental tomorrow." (Document No. 3-2, p. 12 and Document No. 60-2, p. 47.)

[6] On April 27, 2006, Plaintiff filed a G-2 Grievance Form complaining that "I am tired of being lied to. The dentist told me on a request I wrote 3-14-06 that he would see me. Well I have not seen him yet. I wrote a G-1 to the Director. She said he would see me 4-20-06. Well still no dentist." Warden McBride responded by Memorandum dated May 5, 2006, stating that "I have been advised that you were escorted to the Dental Department yesterday, 04 May 2006. You were seen, x-rays were taken, impressions were made for upper dentures and a lower partial. A follow-up appointment was scheduled for Thursday, 11 May 2006 for a tooth extraction. I was advised that the delay in the tooth extraction was because you have been prescribed a blood thinner by the doctor in regard to other health maters, and before an extraction can be done, you have to be off the blood thinner for a week. As a result I consider your grievance resolved." Warden McBride advised Plaintiff of his right to appeal to the Commissioner of the Division of Corrections. (Document No. 3-2, p. 13; Document No. 60-1, p. 12; Document No. 60-2, p. 49.)

reveals that Plaintiff received timely treatment after every request. The 11 month delay between Dr. Pennington's diagnosis and the extraction of Plaintiff's upper teeth appears to be the result of negligence, not an unconstitutional policy or practice. Dr. Pennington stated that Plaintiff's teeth would be extracted "[w]henever Q-1 brings you up." (Document No. 81, p. 1, Exhibit 1.) Due to what appears to be negligence on the part of prison officials or Dr. Pennington, Plaintiff was not brought to medical for his tooth extraction until April 13, 2005. The undersigned notes that Plaintiff failed to file a grievance or request for medical care until April 5, 2005. Following the filing of his grievance, Plaintiff was examined on April 13, 2005, and his teeth were extracted on April 21 and 27, 2005. Although Dr. Buch acknowledged that Plaintiff's facial root tip fractured during the extraction, he noted that the "tip should eventually emerge and be easily removed. No further treatment planned at his time." (Document No. 60-1, p. 23.) Thus, Plaintiff next complains that there was unreasonable delay in removing the root tip from his gums and providing him with dentures. A review of the medical records, however, reveals that Plaintiff failed to file a grievance concerning the above until April 18, 2006. In response to Plaintiff's G1 grievance, Defendant Westfall[7] scheduled Plaintiff for a medical appointment on April 20, 2006. It appears that Plaintiff's appointment did not occur on April 20, 2006, and Plaintiff filed a G2 grievance on April 27, 2006. On May 4, 2006, Dr. DeVere began treating Plaintiff for his complaint that a root tip was coming through his gums and his need for dentures.[8] There is no evidence that Dr. Buch's decision to wait for the root tip to emerge naturally was unreasonable or the result of an unconstitutional policy or practice. Further, there is no

---

[7] Defendant Westfall declares that she "did not have authority to make policy or change policy for CMS." (Document No. 80-1, p. 1.)

[8] The undersigned notes that the Court has dismissed Dr. DeVere as a defendant finding that Dr. DeVere provided Plaintiff with constitutionally adequate dental care.

indication that Plaintiff's dental treatment was delayed because CMS had a practice of "setting [an inmate's treatment] back further and further" in response to the filing of a grievance.[9] Rather, the record reveals that Plaintiff received timely treatment following the filing of every grievance or medical request. The delay in extracting Plaintiff's teeth and providing him with dentures appears to be the result of negligence, and it is well established that a corporation cannot be held liable for the negligence of another based upon the doctrine of *respondeat superior*. See Austin, 195 F.3d at 727. Accordingly, the undersigned finds that CMS's motion for summary judgment should be granted because there is no evidence that CMS denied or delayed dental care to Plaintiff because of an unconstitutional policy or practice.

**B.     Defendant Westfall's Motion for Summary Judgment.**

Defendant Westfall argues that there is no evidence that she acted with deliberate indifference to Plaintiff's dental care. Defendant Westfall explains that based upon her "personal knowledge, experience and review of the records in this case, no delay in Jack Green's dental care was the result of any CMS policy or of deliberate indifference by CMS or any individual employed by CMS." (Document No. 80-1, p. 2.) Defendant Westfall further argues that there is "no evidence that [she] had any culpable state of mind regarding this patient's dental care." (Document No. 82, p. 5.)

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811

---

[9] Plaintiff stated that in 1997, "I worked in Medical and the dentist's office when we first got here, and if you start filing grievances, they get them, they set you back further and further, it takes longer and longer." (Document No. 60-1, p. 8.) Plaintiff described his job in medical as follows: "I cleaned the dentist's office [and] I answered the phone . . . if they were busy." (*Id.*, p. 9.)

(1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation); Dental care is recognized as "one of the most important medical needs of inmates." Hudson v. Bassett, 2008 WL 4820511, **6 (W.D.Va.); Sanders v. Bassett, 2008 WL 1967503, *2 (W.D.Va.), quoting Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980). Sentenced prisoners are therefore constitutionally guaranteed adequate medical/dental care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*,

14

we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) First, therefore, Plaintiff in this case must allege and eventually establish a "sufficiently serious" deprivation of adequate dental care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate

indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that Defendant Westfall was aware that he was receiving constitutionally inadequate dental care and disregarded the serious physical and mental consequences.

Assuming that Plaintiff's dental problems were serious enough to give rise to an Eighth Amendment claim, there is no indication in the record that Defendant Westfall was aware that Plaintiff was receiving constitutionally inadequate dental care and disregarded the serious physical and mental consequences. Specifically, there is no evidence that Defendant Westfall had knowledge of the circumstances until she received Plaintiff's G1 grievance, which was almost two years after Plaintiff saw Dr. Pennington and about one year after Dr. Buch extracted his teeth. The medical records reveal that Defendant Westfall was first made aware that Plaintiff needed dental treatment on April 18, 2006. (Document No. 60-2, p. 47.) On April 19, 2006, Defendant Westfall responded to Plaintiff's grievance informing Plaintiff that he had been scheduled for a dental appointment on April 20, 2006. (Id.) Although Plaintiff's April 20, 2006, appointment was briefly delayed due to security concerns within the Quilliams Unit, the appointment was rescheduled for May 4, 2006. On May 4, 2006, Dr. DeVere began his treatment of Plaintiff by taking x-rays and making impressions for Plaintiff's upper dentures and lower partial.[10] Thus, the record reveals that once Defendant

---

[10] The undersigned notes that the Court has already determined that Plaintiff received constitutionally adequate dental care following his treatment by Dr. DeVere. Therefore the

Westfall was made aware of Plaintiff's complaints, Defendant Westfall promptly responded by arranging dental treatment for Plaintiff. There is no indication that Defendant Westfall knew of and disregarded an excessive risk to Plaintiff's health or safety. The undersigned, therefore, finds that Defendant Westfall's motion for summary judgment should be granted because there is no evidence that Defendant Westfall violated Plaintiff's Eighth Amendment rights by acting with deliberate indifference to Plaintiff's dental needs.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Correctional Medical Services, Inc., and Mary Westfall's Motion for Summary Judgment (Document No. 80.), **DENY** Plaintiff's "Motion to Dismiss Correctional Medical Services, Inc., and Mary Westfall's Motion for Summary Judgment"(Document No. 91.), **DISMISS** Plaintiff's Complaint(Document No. 3.) and remove this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which

---

undersigned will not review Defendant Westfall's actions after Dr. DeVere began his treatment of Plaintiff. (Document Nos. 70 and 75.)

objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and transmit a copy to counsel of record.

Date: February 2, 2010.

R. Clarke VanDervort
United States Magistrate Judge